UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RUTH WENIG,

                     Plaintiff,

-against-

THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK,

                     Defendant,
-----------------------------------------------------------------X

**AMENDED COMPLAINT**

17 CIV 07352 (JBW) (VMS)

RUTH WENIG by her attorney Stewart Lee Karlin, Esq., complaining of Defendant, THE DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matter, as follows:

**PRELIMINARY STATEMENT**.

1. This is an action pursuant to the Rehabilitation Act 29 U.S.C. § 794 to vindicate the civil rights of plaintiff. Plaintiff contends that defendants altered the terms, conditions, and privileges of her municipal employment and otherwise subjected Plaintiff to a hostile work environment because she advocated on behalf of disabled, special education students and due to filing this lawsuit.

**JURISDICTION AND THE PARTIES**

2. This Court has jurisdiction over this action under 29 U.S.C. Section 701, et seq., and 29 U.S.C. Section 794. Venue is proper, as the operative events occurred within Kings County.

3. THE NEW YORK CITY DEPARTMENT OF EDUCATION (hereinafter, "municipal defendant") is a recipient of federal funds for 29 U.S.C. Section 701, et seq. purposes.

Defendant may sue and be sued, and its principle place of business is in Kings County, New York. At all relevant times, THE NEW YORK CITY DEPARTMENT OF EDUCATION employed plaintiff as a Teacher. THE NEW YORK CITY DEPARTMENT OF EDUCATION is herein being sued for having violated plaintiff's civil rights while acting under color of state law and/or acting pursuant to its own practices, customs and policies. The NEW YORK CITY DEPARTMENT OF EDUCATION is a recipient of federal funds.

## FACTUAL STATEMENT

4. Plaintiff is employed by the Department of Education of the City of New York ("DOE") for twenty-eight years as a special education teacher in District 75. She is currently employed in the Hospital Unit, in Kings County Medical Center.

5. Plaintiff's performance has been satisfactory or better during her entire career with the DOE.

6. Because this is a hospital setting the special education students are mandated to receive at least one hour of instruction per day in a 1:1 setting and high school students are supposed to receive two hours of instruction in a 1:1 setting. The Chancellors mandates the following instructional time: "Students must be given a minimum of five hours of instruction per week at the elementary level or a minimum of ten hours of instruction per week at the secondary level, preferably on a schedule of two hours daily."

7. Starting in the 2016-2017 school year, the Hospital Unit has been understaffed by at least one special education teacher, and thus the students had not been receiving the necessary and required instruction time for their 1:1 instruction.

8. In September 2016 and a number of times thereafter, Plaintiff complained orally to the principal, Mary Maher about the Hospital Unit being short staffed and thus not being able to address the special needs of the hospitalized students since the students were not receiving

the amount of 1:1 instruction time required to meet their educational needs.

9. Plaintiff's complaints regarding being short staffed and not meeting the students special education needs to the Principal Mary Maher fell on deaf ears.

10. Thus, Plaintiff complained via email on December 6, 2016 to the Principal that the Hospital Unit was short staffed in that the Unit was supposed to have two teachers and that Plaintiff could not adequately serve these many special education students.

11. Plaintiff email was not acted upon and there was no adequate response.  As result of not addressing the issue of being short staffed and that the Plaintiff could not adequately serve the special education students alone, on March 21, 2017 Plaintiff sent another email to the Principal that the hospital unit was still short staffed in that the Unit was supposed to have two teachers and that Plaintiff could not adequately serve these many special education students.

12. The Principal failed to address the issue of the staffing and not meeting the needs of these education students.

13. As a direct result of Plaintiff's advocacy for special educations students and her complaints, and her filing this lawsuit, Plaintiff was retaliated against as set forth herein:

   a. The Principal in the 2016-2017 school year initiated two baseless Office of Special Investigations against Plaintiff.  Both OSI investigations were dismissed as unsubstantiated.

   b. Plaintiff has been repeatedly called into the Principals Office, almost on a weekly basis and her performance has been criticized and she has been threatened with termination.

   c. Plaintiff's work is microscopically scrutinized.

    d.      Plaintiff had no prep periods as she had to do all the admissions, discharges, logs, records, home school referrals for every student.

    e.      Plaintiff has been denied the right to go to Professional Development.

    f.      Plaintiff had asked for a reasonable accommodation (parking space), however, the Principal deliberately failed to reasonable accommodate Plaintiff due to her advocacy for special needs children.

    g.      Plaintiff received a baseless letter to the file in October 2017.

    h.      Plaintiff received another baseless letter to the file dated November 15, 2017.

    i.      Ms. Wenig met with Principal Maher and with UFT Rep Edith Hitchen on November 6, 2017. She was accused of not giving a child a math test in March 2017. After the meeting, Ms. Wenig realized, the child in question was present during the ELA test in March. The Math test was given in May. Ms. Wenig told Ms. Maher this, and she used this information when she was written up for failure to follow Hospital Schools Procedures. She changed her charges from Math to ELA simply because she wanted to put a letter in Ms. Wenig's file. Also noteworthy is the extraordinary delay in issuing this discipline regarding an incident that took place eight months earlier.

    j.      Thereafter, on Monday, November 13, 2018, Ms. Wenig received an email in which AP Klein advised Ms. Wenig that the new teacher, Grace Einhorn had been going through the ID process and she will be coming to assist her because of having to many students. On November 14, 2017, Ms. Wenig met Grace Einhorn in the parking lot. She advised Ms. Wenig that she is not going to be coming to her site at all, and she will be teaching an enrichment program

        in writing in Building R, a few buildings down. Building R is fully staffed with teachers, paraprofessionals, a gym teacher. On November 16th, 2017, Grace Einhorn mentioned to Ms. Wenig that she does not have to be in before 9:00 am and that none of the teachers at building R are required to arrive at 8:30 am.  However, the school hours are from 8:30am to 3:20. Ms. Wenig asked Assistant Principal Steve Klein about these inconsistencies.

k.      On November 16, 2017, Ms. Wenig received a letter to her file about the Math testing issue. This letter is plainly retaliatory and is not valid because she had this student only during the ELA testing.  On November 17th, Ms. Wenig received yet another letter to appear in the Bronx to meet with Ms. Maher on November 20, 2017.  Ms. Wenig was charged with Professional Misconduct for alleging raising her voice at AP Klein on November 16, 2017, an allegation she categorically denies.  She was on a land line, he was on a cell phone, and kept asking her to speak up.

l.      On November 22, 2017, Plaintiff had 13 students.  Principal Maher says it is a "typical" day for one hospital school teacher.  She states that if she cannot "Manage this case load" in a derogatory manner, perhaps another teacher Laura Williams can come by occasionally to help her.  The number of students grossly exceeds the standard set and is contrary to law.  On November 22, 2017, Principal Maher sent out a revised Organization Sheet. The only change is that the vacancy for the other position in Ms. Wenig's site has been removed.

m.  On November 27, 2017, the school secretary had taken it upon herself to mark Ms. Wenig absent on October 19, 2017. Ms. Wenig was at work. The Secretary had ripped up her correct time sheet. She requested another one, and Ms. Wenig forwarded another time card to her. However, she was then told to have to submit a third-time card for that day.

n.  On November 27, 2017, Plaintiff received another letter to her file charging her with insubordination for yelling at AP Klein.

o.  On November 29, 2017, was visited by AP's Cynthia Biondi and Steve Klein. They claimed to be there to check her attendance, but followed her for at least an hour. They berated her and threatened her with charges of insubordination.

p.  On December 5, 2017, Ms. Wenig received an email from AP Klein telling Ms. Wenig that he is coming for a Pre-Observation conference in an hour. A pre-observation conference is typically arranged between the teacher and administrator a few days ahead of time so that the teacher can prepare a proposed lesson plan to have reviewed for the actual observation.

q.  During the pre-observation conference, Ms. Wenig was advised that the observation would take place on December 7, 2017. Ms. Wenig advised him that he did not know what students she would have, and AP Klein responded to have lessons prepared for grades Pre-K through 12. Again, to have these many lesson plans is extraordinarily unusual. AP Klein did not look at a specific lesson as he is supposed to during a pre-observation. Thus, Ms. Wenig did not receive an appropriate pre-observation feedback, as a specific lesson for a specific child was not looked over and suggestions made.

r. On December 6, 2017, Ms. Wenig received an email, clearly intended as a write up by AP Biondi for her file. There was no follow through and the letter was for harassment purposes. It paints her as a teacher who is inept and does not know how to teach, and they just came to help.

s. On December 7, 2017 AP Klein came during her prep time, and demanded that he do the observation. Ms. Wenig advised AP Klein that she did not have any students that would be appropriate and again was threatened with insubordination. However, notwithstanding the foregoing, she went to a student who is in 9-10 grade, whom she had just met. The lesson was interrupted by a parade of hospital staff. The student was informed about 10 minutes into the lesson to get dressed and that she was leaving. Ms. Wenig was told by the hospital to wrap it up. Ms. Wenig asked AP Klein if he wanted to come back another time. He said NO. Ms. Wenig wanted to stop the lesson and because the student became less cooperative. AP Klein advised Ms. Wenig that it was a "Good lesson", however he is not allowed to tell her if the lesson was satisfactory. He stated that Principal Mary Maher would give her the rating and write up the observation report. It is extremely unusual to have someone other than the administrator who conducted the observation to write the observation and provide a rating. It is against DOE/UFT practice and policy for anyone other than the person doing the observation to write the observational report or rate the lesson.

t. On December 15, 2017, Ms. Wenig received an email with an observation report inconsistent with the actual event. Ms. Wenig is cited for not having an

Page 7 of 10

        aim (She had an objective which is the same thing), blamed for the hospital noise and interruptions, that the lesson was cut short and that she did not give the student a writing portion during the lesson. She was told that the lesson did not show prior knowledge of the student which is true because she had never met the student before. The observational report did not mention that the student was discharged mid-way through the lesson. But rather said that she had no "Exit Ticket", no written work and no homework assignment. This is a false assertion. AP Klein saw that she had an exit ticket for the student on the lesson plan. Additionally, AP Klein apologized for the U rating on the observation. He claimed that he was not allowed to write it up or rate it. AP Klein told Ms. Wenig at the time that it was a good lesson and he was sorry that it was being taken out of his hands.

u. On December 22, 2017, Ms. Wenig was assigned ten students.

v. After the Christmas break, in January 2018, two coaches were sent to follow Ms. Wenig all day on every Wednesday. One coach shadowed her with no purpose other than harassment and neither coach had ever worked in a hospital environment before. Neither of the coaches had been in a classroom for over six years and both were personal friends of Principal Mary Maher. Finally, the coaches were only teachers themselves, not administrators. They were not there to help her but took notes for letters to Plaintiff's file.

w. Plaintiff now must fax her census every morning to AP Klein. This is under the guise that Klein is monitoring her census and will provide help if needed. However, her numbers are high, and she has not gotten any help. This new

        duty takes up at least 15 minutes of an already frantic Prep/Admin that she is already doing for two people.  No other teacher is ordered to do this.

    x.    On or about January 11, 2018, Plaintiff still had 10 students with no help

14. At all times relevant, plaintiff performed her job responsibilities in an exemplary fashion.

15. As a direct result of Plaintiff complaining about the principal's neglecting to enforce laws pertaining to special education and disabled students and advocating on their behalf and due to the filing of this lawsuit, plaintiff was retaliated against by the Principal by repeatedly targeting her.

16. Plaintiff's personnel file has been papered with baseless and defamatory letters to the file and baseless investigations that have stigmatized Plaintiff.

17. The DOE is deliberately creating a hostile work environment and setting up Ms. Wenig for a 3020-a teacher removal proceeding in an effort to force Plaintiff to retire.

**FIRST CLAIM FOR RELIEF**

18. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth at length herein.

19. The defendant, the New York City Department of Education violated the Rehabilitation Act, 29 U.S.C. Section 504, et seq. by discriminating and retaliating against plaintiff because she advocated on behalf of disabled, Special Education students and because of filing this lawsuit

20. As a result of defendants' actions, plaintiff suffered and was damaged.

21. Plaintiff has satisfied all conditions precedent to filing this lawsuit before commencing suit.

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**

WHEREFORE, Plaintiff respectfully requests a judgment against Defendant as follows:

    a.    A declaration from the Court that Plaintiff's rights under 504 were

        violated, that the the unsatisfactory observations and evaluations and letters to the file be expunged;

b.     Back pay lost;

c.     Compensatory damages for pain and suffering;

d.     Attorney fees and costs;

e.     Any other relief as this Court may deem just and proper under the circumstances.

Dated: New York, New York
      January 12, 2018                               Respectfully submitted,

                                                      STEWART LEE KARLIN
                                                    LAW GROUP PC

                                                    s/Stewart Lee Karlin
                                                   STEWART LEE KARLIN, ESQ.
                                                   Attorney for Plaintiff
                                                   111 John Street, 22nd Floor
                                                   New York, N.Y. 10038
                                                   (212) 792-9670